Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL XI

| ADVANCED HOSPICE SERVICES, INC.<br><br>Recurrente<br><br>v.<br><br>DEPARTAMENTO DE SALUD, SECRETARÍA AUXILIAR DE REGLAMENTACIÓN Y ACREDITACIÓN DE FACILIDADES DE SALUD<br><br>Recurrido<br><br>DD HOME CARE SAN FRANCISCO DE ASÍS, INC.<br><br>Parte Indispensable-Recurrida | KLRA202500170 | REVISIÓN JUDICIAL Procedente del Departamento de Salud<br><br>Querella Núm.: Q-24-02-002 (VLT)<br><br>Sobre: Querella contra la Resolución del Secretario de Salud en la Propuesta 23-06-009, para establecer un Programa de Servicio de Hospicio en Región Este |
| --- | --- | --- |

Panel integrado por su presidenta, la Juez Brignoni Mártir, la Jueza Álvarez Esnard y la Jueza Prats Palerm.

Álvarez Esnard, jueza ponente

## SENTENCIA

En San Juan, Puerto Rico, a 18 de julio de 2025.

Comparece Advanced Hospice Services, Inc. ("Advanced" o "la Recurrente") mediante *Recurso de Revisión*. Nos solicita la revocación de la *Resolución* emitida el 19 de febrero de 2025, notificada el 21 de febrero del mismo año, por el Departamento de Salud ("la Agencia" o "Departamento"). En virtud de dicho dictamen, la agencia recurrida resolvió desestimar la *Querella* con la denominación alfanumérica Q-24-02-002, interpuesta por Advanced. El fundamento de esta decisión obedeció a múltiples incumplimientos por parte de la Recurrente.

Por los fundamentos que expondremos a continuación, **confirmamos** la *Resolución* recurrida.

Número Identificador

SEN(RES)2025_____

**I.**

Procedemos a exponer el trasfondo fáctico y procesal que precedió a la presentación del recurso de epígrafe. El 22 de febrero de 2024, Advanced radicó *Querella* denominada Q-24-02-002. En esta, la Recurrente presentó su oposición e impugnación a la *Resolución* que otorgó el Certificado de Necesidad y Conveniencia ("CNC") a DD HomeCare San Francisco de Asís, Inc. ("DD HomeCare"), para operar un programa de Servicios de Salud en el Hogar en la Región Este.[1] La Recurrente cuestionó además, el acto administrativo realizado por el Departamento a través de la Secretaría Auxiliar para la Regulación de la Salud Pública ("SARSP"), mediante el cual aprobó el CNC presentado en la Propuesta 23-06-009, que autorizaba la creación del programa de hospicio en dicha región.[2]

En su alegato, Advanced sostuvo que el otorgamiento del CNC incumplía con lo establecido en el Reglamento del Secretario de Salud para Regir el Otorgamiento de Certificados de Necesidad y Conveniencia ("Reglamento Núm. 9084").[3] Específicamente, señaló que dicho reglamento dispone que "no se permitirá que se establezca un programa de servicios en el Hogar nuevo hasta tanto los Programas de Servicios en el Hogar existentes en el Área de Servicios haya atendido un promedio de (500) pacientes durante el último año".[4] Argumentó que la propuesta de DD HomeCare no cumplía con el criterio previamente citado.

En respuesta a tales alegaciones, el 11 de marzo de 2024, SARSP presentó *Contestación a la Querella.*[5] En esta, negó ciertas alegaciones y levantó sus defensas afirmativas. De igual manera,

---

[1] Véase, Apéndice de la Recurrente, págs. 60-64.
[2] En ese entonces llamada: Secretaría Auxiliar para Reglamentación y Acreditación de Facilidades de Salud ("SARAFS").
[3] Véase, Apéndice de la Recurrente, pág. 62.
[4] *Íd.*
[5] Véase, Expediente Administrativo, anejo del *Escrito en Cumplimiento de Orden* del recurrido, págs. 189-191.

esbozó que las alegaciones levantadas por Advanced no presentaban hechos constitutivos de reclamo o infracción, por tanto, negó la forma en que estaban redactadas por tratarse de una interpretación o teoría de la Recurrente. Asimismo, señaló que el Departamento ostentaba discreción para expedir o denegar certificaciones, siempre y cuando cumplieran con la política pública de la agencia. Por todo lo anterior, solicitó la desestimación de la *Querella.*

Así las cosas, se convocó una videoconferencia la cual se celebró el 5 de junio de 2024, mediante *Orden* emitida y notificada el 29 de abril del mismo año.[6] Una vez celebrada, el Oficial Examinador del Departamento dictó y notificó *Orden* **el 1 de julio de 2024**, en la que dispuso lo siguiente:

> Se le concedieron a la querellante Advanced Hospice Services (Advanced) quince (15) días para cursar descubrimiento de prueba, a partir que la parte indispensable DD Homecare San Francisco (DDSF) anuncie representación legal dentro de los próximos diez (10) días a partir de esta Orden. El referido descubrimiento tendrá que constarse en 15 días a partir de su recibo.
>
> No obstante, dicho término para Advanced aplica igualmente si DDSF no anuncia dicha representación, a la luz de lo dispuesto en el Reglamento 9321- Regla 11(c)- y la LPAUG sec. 3.0(b): "Advertencia de que las partes podrán comparecer por derecho propio, o asistidas de abogados incluyendo los casos de corporaciones y sociedades."
>
> Provean al Foro las partes en 15 días de común acuerdo, para una videoconferencia con antelación a [vista] en su fondo, una fecha que coincida con alguna de las siguientes disponibles para este Oficial Examinador:
>
>> Martes, 30 de julio de 2024
>>
>> Miércoles, 31 de julio de 2024
>>
>> Martes, 6 de agosto de 2026.
>
> Cualquier controversia que subsista deberán intentar resolver de buena fe como parte del informe requerido por la Regla 21 del Reglamento 9321, con especial atención a su inciso (4). (Subrayado en original).[7]

Cabe agregar que, conforme se desprende del expediente, el Programa de Servicios de Salud en el Hogar y Hospicio San Lucas ("San Lucas") presentó *Querella*, denominada Q-24-02-005, con los

---

[6] Véase, Expediente Administrativo, págs. 187-188.
[7] *Íd.*, págs. 185-186.

mismos fines que Advanced. En respuesta a dicha *Querella*, SARSP presentó documento intitulado *Contestación a Querella* en la que negó la mayoría de las alegaciones y esbozó ciertas defensas afirmativas.[8]

Como resultado a lo anterior, el 23 de julio de 2024, el Oficial Examinador notificó *Orden* consolidando las querellas instadas por Advanced y San Lucas.[9] De igual forma, por virtud de la aludida orden, **se destacó que la Recurrente no cumplió con la *Orden* notificada el 1 de julio de 2024**, por no informar las fechas hábiles para celebrar la videoconferencia. En consecuencia, el Oficial Examinador dispuso que Advanced **debía mostrar causa en diez (10) días, si aún mantenía interés en su querella** y de cumplir con ello, se celebraría la *Videoconferencia con Antelación a la Vista en su Fondo* el 18 de septiembre de 2024. Surge del expediente, que esta orden se notificó únicamente a los abogados de las partes.

Consecuentemente, el **1 de agosto de 2024**, San Lucas presentó *Moción en Cumplimiento de Orden.*[10] Sin embargo, el plazo concedido por el Oficial Examinador expiró **sin que Advanced cumpliera con lo dispuesto**. Por tanto, el 22 de agosto de 2024, el Oficial Examinador, notificó *Orden* en la que reiteró: **"[m]uestre causa en diez (10) días Advanced Hospice Services, Inc., por qué no deba desconsolidarse y desestimarse su querella (Q-24-02-002) por incumplir con la Orden notificada el 23 de julio de 2024"** (Énfasis nuestro).[11] Es preciso destacar que la aludida *Orden* fue notificada tanto a **los abogados como a las partes**.[12]

---

[8] *Id.*, págs. 178-184.
[9] *Íd.*, págs. 176-177.
[10] *Íd.*, págs. 174-175.
[11] *Íd.*, págs. 158-159.
[12] *Íd.* pág. 159.

Dado que no hubo respuesta por parte de la Recurrente, **el 17 de septiembre de 2024**, el Oficial Examinador emitió *Orden* y notificó nuevamente a los abogados y a las partes. Es menester resaltar que también Advanced fue notificado. En el aludido dictamen, se estableció que, por no cumplir con las ordenes anteriores, **se desconsolidaba y desestimaba la *Querella* Q-24-02-002.**[13] No obstante lo anterior, de los documentos ante nuestra consideración se desprende que, durante la videoconferencia llevada a cabo el **18 de septiembre de 2024**, el Oficial Examinador **reconsideró su determinación** respecto a la desestimación y, en consecuencia, Advanced continuó con su causa de acción.[14]

Posteriormente, el 23 de octubre de 2024, San Lucas y DD HomeCare presentaron conjuntamente, *Moción Informativa.*[15] Atendido este escrito, el 1 de noviembre de 2024, el Oficial Examinador dictó *Orden* y emitió el siguiente pronunciamiento:

> Enterado. Se observa que en la comparecencia se incluye a la parte indispensable y en el contenido se agrega a la otra querellante Advanced aunque solo está firmada por la abogada de San Lucas.
>
> Tomando en consideración lo discutido en las videoconferencias del 18 de septiembre de 2024 en estas querellas y las 24-02-003,06 (consolidadas), <u>es importante cuanto antes que las partes informen como finalmente acordaron distribuir los testigos y peritos para la videoconferencia en su fondo. Se habían concedido de común acuerdo 30 días para ello, que ya vencieron.</u>
>
> Se hace constar que la querellante Advanced Services, Inc. acreditó su interés de continuar con su querella entonces.
>
> Fueron separados para las videoconferencias en su fondo, el jueves, 5 y viernes, 6 de diciembre de 2024 a partir de las 9:30 am. <u>Están pendientes de enviarse los enlaces de Teams, por el incumplimiento antes indicado.</u>
>
> También es importante que se cumpla con la presentación del Informe requerido por la Regla 21 del 9321, en o antes del jueves, 14 de noviembre de 2024. (Subrayado en original).[16]

De otra parte, el 19 de noviembre de 2024, la Recurrente y San Lucas conjuntamente presentaron varias mociones, a saber:

---

[13] *Íd.*, págs. 154-155.
[14] Véase, Apéndice de la Recurrente, pág. 12.
[15] Véase, Expediente Administrativo, págs. 103-104.
[16] *Íd.,* págs. 101-102.

(1) *Moción en solicitud de Remedios,* (2) *Moción para Unir Provisionalmente Expediente,* (3) *Moción para la Adjudicación de Controversias de Hecho y de Derecho* y (4) *Solicitud de Sentencia Sumaria.*[17] Igualmente, el 25 de noviembre de 2024, DD HomeCare instó *Moción Informativa y en Solicitud de Suspensión de Vista.*[18] Al respecto, el 2 de diciembre de 2024, el Oficial Examinador emitió *Orden Enmendada* en la que atendió cada uno de los escritos y, además, señaló, entre otras cosas, que:

> Aparte que esta moción no cumple en lo absoluto con la Regla 12 de 9312, la presentación tardía de una solicitud de resolución sumaria (41 págs.) no deja sin efecto nada de lo que estaba pendiente y se incumplió por todas las partes, tal como e informe al que se refiere la Orden #2 de hoy.
>
> Ya que ninguna de las partes cumplió con infirmar como coordinar con las Q-24-02-003 y 006 los testigos y peritos para la videoconferencia en su fondo, se atenderán estas querellas consolidadas 002 y 005 exclusivamente el jueves, 5 de diciembre a partir de las 9:30 am.
>
> Como se desconoce la posición de la querellada SARSP y evidentemente las querellantes por su incumplimiento con el informe no tiene interés en una videoconferencia evidenciaría, se discutirá en la señalada la posibilidad de resolver sumariamente estas querellas.
>
> **No obstante, si cualquiera de las partes comparece preparada para la videoconferencia en su fondo, se celebrará la misma.** (Énfasis nuestro).[19]

Cabe destacar que dicha *Orden* se notificó por correo electrónico **a los abogados y a las partes directamente**.

Así las cosas, el 6 de diciembre de 2024, el Oficial Examinador emitió *Orden* en la que destacó que, **llegada la celebración de la videoconferencia en su fondo, Advanced compareció sin estar preparado.**[20] En la misma, se desconsolidó el caso y se le recomendó al Secretario la desestimación de la *Querella* Q-24-02-002. De igual forma a la aludida orden emitida, esta decisión se **notificó directamente a las partes y a sus abogados**.

---

[17] Véase, Apéndice de la Recurrente, págs. 69-118.
[18] *Íd.,* págs. 119-121.
[19] Véase, Expediente Administrativo, págs. 38-40.
[20] Véase, Apéndice de la Recurrente, págs. 122- 125.

Tras varios trámites procesales que no son necesarios destacar, el 7 de febrero de 2025, el Oficial Examinador emitió *Informe del Oficial Examinador* ante el Secretario de Salud. Por virtud de este escrito, expuso que, al amparo de lo dispuesto en la Regla 28 del Reglamento Núm. 9321, recomendó formalmente la desestimación de la *Querella* Q-24-02-002, por los reiterados incumplimientos de la parte Recurrente.[21]

En este marco, el 19 de febrero de 2025, el Secretario de Salud, acogió la recomendación del Oficial Examinador, presentada en el *Informe del Oficial Examinador,* y en consecuencia, desestimó la *Querella* Q-24-02-002 mediante *Resolución*, notificada el 21 de febrero de 2025.[22] Ante ello se mantuvo inalterada la determinación sobre el otorgamiento del CNC a DD HomeCare.

Insatisfecha con el resultado, el 24 de mayo de 2025, Advanced recurrió ante esta Curia mediante *Recurso de Revisión.* En su escrito sostiene que la agencia incurrió en los siguientes señalamientos de error:

> Erró el Secretario de Salud al emitir una Resolución Final ordenando la desestimación de la Querella Núm. 24-02-002, sin determinaciones de hecho ni conclusiones de derecho.
>
> Erró el Secretario de Salud al emitir una Resolución ordenando la desestimación de la Querella Núm. 24-02-002, sin la celebración de la vista requerida por la Ley Núm. 2 y los Reglamentos Núm. 9321 y 9084.
>
> Erró el Secretario de Salud al emitir una Resolución basado en un expediente incompleto y bajo un fundamento parcializado por el Oficial Examinador.

El 26 de marzo de 2025 este Tribunal de Apelaciones dictó *Resolución* y le concedió un término de treinta (30) días, contados a partir de su notificación, al Departamento para exponer su posición sobre el recurso. No empece a ello, el 24 de abril de 2025, la Agencia presentó *Solicitud de Término Adicional.* En esta, la

---

[21] Véase, Apéndice de la Recurrente, págs. 7-15.
[22] *Íd.*, pág. 1-6.

Oficina del Procurador General solicitó un plazo adicional. Examinado el escrito sometido, esta Curia emitió *Resolución* el 30 de abril de 2025 en la cual concedió al Departamento un término a vencer el 7 de mayo de 2025.

No obstante lo anterior, el 6 de mayo de 2025 la agencia presentó *Urgente Solicitud de Reconsideración y Término,* la cual esta Curia declaró *No Ha Lugar* mediante *Resolución,* emitida el 7 de mayo de 2025. Aun así, el Departamento presentó *Escrito en Cumplimiento de Orden* en oposición al *Recurso de Revisión* el 12 de mayo de 2025, fuera del término concedido por este Tribunal. Sin embargo, esta Curia decidió acoger dicho escrito, pese a su carácter tardío, en virtud de la Regla 72 (c) del Reglamento del Tribunal de Apelaciones. De igual manera, cabe mencionar que la agencia acompañó su escrito en oposición con una copia del expediente administrativo del caso. Con el beneficio de la comparecencia de las partes, procedemos a resolver.

## II.

### A. Estándar de Revisión Judicial de Determinaciones Administrativas

La revisión judicial tiene como objetivo asegurar que los organismos administrativos actúen conforme a las facultades concedidas por ley. *OEG v. Martínez Giraud,* 210 DPR 79, 88 (2022). Sabido es que es norma de derecho claramente establecida que los tribunales apelativos, al momento de revisar las determinaciones administrativas, estamos obligados a conceder deferencia a las decisiones de las agencias. *Katiria's Cafe, Inc. v. Municipio Autónomo de San Juan,* 215 DPR__(2025) 2025 TSPR 70, pág. 5. Tales determinaciones cuentan con vasta experiencia y conocimiento especializado en los asuntos que se le han encomendado. *OEG v. Martínez Giraud, supra,* pág. 88. Por lo cual, el respeto hacia la resolución administrativa debe sostenerse, hasta tanto no se demuestre mediante evidencia suficiente que la

presunción de legalidad ha sido superada o invalidada. *Capo Cruz v. Jta. Planificación*, 204 DPR 581, 591 (2020); *Rolón Martínez v. Caldero López*, 201 DPR 26, 35 (2018). Respecto a las determinaciones de hechos de las agencias, los tribunales no intervendremos en estas, siempre y cuando surja del expediente administrativo evidencia sustancial que las respalda. *Capo Cruz v. Jta. de Planificación, supra*, pág. 591.

A pesar de ello, la Ley Núm. 38 de 30 de junio de 2017, según enmendada de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, Ley Núm. 38-2017, 3 LPRA sec. 9601, ("LPAU"), autoriza expresamente la revisión de las determinaciones de estos organismos. Sec. 4.5 de la LPAU, *supra*. En particular, la misma ley dispone que "[l]as conclusiones de derecho serán revisables en todos sus aspectos por el tribunal". No obstante, ello no implica que los tribunales, en su labor de revisión, puedan prescindir arbitrariamente de los fundamentos e interpretaciones legales de los organismos administrativos y sustituir el criterio de éstas por el propio. *Capo Cruz v. Jta. de Planificación, supra*, pág. 591; *Asoc. FCIAS. v. Caribe Specialty II*, 179 DPR 923, 941 (2010). Por el contrario, los tribunales revisores dejaran sin efecto la postura de las autoridades administrativas cuando "[n]o se pueda hallar fundamento racional que explique o justifique el dictamen administrativo". *Rolón Martínez v. Caldero López Policía, supra*, pág. 36.

A tales efectos, los tribunales le debemos deferencia a las decisiones de las agencias administrativas salvo que: (1) la decisión no está basada en evidencia sustancial; (2) el organismo administrativo ha errado en la aplicación o interpretación de las leyes o los reglamentos; (3) ha mediado una actuación arbitraria, irrazonable o ilegal, o (4) la actuación administrativa lesiona derechos constitucionales fundamentales. *Capote Rivera v. Voili*

*Voila Corporation*, 213 DPR 743, 754–55 (2024). En ausencia de ello, "aunque exista más de una interpretación razonable de los hechos, procede que se valide la interpretación que realizó la agencia administrativa recurrida". *Super Asphalt v. AFI y otros*, 206 DPR 803, 819 (2021).

### B. Facultad adjudicativa del Departamento de Salud

La Ley Orgánica del Departamento de Salud, Ley Núm. 81 de 14 de marzo de 1912, según enmendada, 3 LPRA sec. 171, delega en el Secretario de Salud todos los asuntos relacionados con la salud, sanidad y beneficencia pública que por ley se le encomienden. Véase, *Vistas Health Care v. Hospicio La Fe et al.*, 190 DPR 56, 62 (2014). Entre estos asuntos, el Departamento de Salud ("Departamento") tendrá poderes para dictar, derogar y enmendar reglamentos, incluyendo los siguientes:

> (4) De manera particular, aquellos necesarios para agilizar y facilitar los trámites administrativos que los ciudadanos deben realizar en las oficinas locales o regionales de la Secretaría Auxiliar para Salud Ambiental del Departamento de Salud, a fin de expedir, en forma rápida y diligente, licencias sanitarias, certificaciones o cualquier otro permiso correspondiente para el cumplimiento de gestiones requeridas por ley o reglamentación al respecto. Véase, Artículo 12, Ley Núm. 81 de 14 de marzo de 1912, 3 LPRA sec. 178.

En armonía con lo anterior, el Departamento adopto el Reglamento de Procedimientos Adjudicativos y de Reglamentación en el Departamento de Salud, Reglamento 9321, del 29 de octubre de 2021 ("Reglamento 9321"), según enmendado. Este cuerpo regulador promueve la solución justa, rápida y económica de las querellas presentadas ante la agencia y provee un procedimiento uniforme. Articulo III, Reglamento 9321, *supra*. Dicho Reglamento aplica a todas las personas y a los procedimientos reglamentarios y adjudicativos ante el Departamento, lo que comprende:

> [I]mposición de multas administrativas; la concesión, denegación o revocación de licencias, permisos, autorizaciones y certificaciones, según las disposiciones reglamentarias de cada Secretaria Auxiliar, Programa u Oficina; la adopción de reglamentación extrema; y será de

aplicación supletoria en todo aquello que no se encuentre contemplado en el reglamento de Certificados de Necesidad y Conveniencia (CNC) en su aspecto procesal. Estableciéndose que toda disposición reglamentaria procesal existente en otros reglamentos del Departamento que no sea incompatible con las disposiciones de este Reglamento permanecerá en pleno vigor y efecto. Además, se complementarán con las disposiciones de este Reglamento. Articulo VI, Reglamento 9321, *supra.*

Por su parte, la Regla 1 del Reglamento 9321, *supra*, dispone el inicio del proceso de adjudicativo con la presentación de la querella ante este organismo administrativo. En cuanto a las facultades decisorias, la Regla 23 del mismo Reglamento establece la autoridad que el Secretario de Salud confiere a los Oficiales Examinadores, específicamente en cuanto los siguientes aspectos:

a. Tomar juramentos y declaraciones.

b. Expedir citaciones para la comparecencia de los testigos o la entrega de evidencia documental, ordenar investigaciones o celebrar vistas administrativas.

c. Recibir evidencia y determinar sobre su admisibilidad.

d. Tomar o hacer juramentos.

e. Reglamentar el curso de los procedimientos y de la vista incluyendo el descubrimiento de prueba, mediante la expedición de órdenes.

f. Celebrar conferencia con antelación a la vista.

g. Ordenar a las partes reunirse y presentar un Informe de Conferencia

h. Disponer de instancias procesales o asuntos similares.

i. Recomendar resoluciones parciales o finales o emitirlas en nombre del Secretario de Salud, si dicha facultad le es expresamente delegada.

j. Imponer el pago de costas y honorarios de abogados. k. Realizar cualquier otra función delegada por el Secretario de Salud o autorizado por las disposiciones de este Reglamento.

En virtud de las funciones conferidas mediante el Reglamento 9321, *supra*, la Regla 39 faculta a la Agencia a imponer sanciones, distinguiendo cuatro (4) supuestos específicos. La disposición reglamentaria establece sobre el primero:

A. Cuando una Parte dejare de cumplir con un procedimiento establecido en este Reglamento, o una orden del Secretario o del Oficial Examinador, este podrá a *motu proprio* o a instancia de parte, ordenar que se muestre causa por la cual no deba imponérsele una sanción.

B. La Orden informara las reglas, reglamentos u ordenes con las cuales no se haya cumplido.

     C. Se le concederá a la parte un término de diez (10) días, contados desde la notificación de la orden, para que muestra causa.

En cuanto a los demás supuestos, la referida Regla dispone que, si la parte sancionada incumple con la orden de mostrar causa o de determinarse que no hubo causa que justifique el incumplimiento, "se procederá a imponer una sanción económica a favor del Departamento o de cualquier parte, que no excederá de doscientos dólares ($200.00) por cada imposición separada a la parte o a su abogado, si este último es responsable del incumplimiento". Adicionalmente, si la parte sancionada no satisface el pago de la sanción, se podrá "ordenar la desestimación de su querella, si es el querellante, o eliminar sus alegaciones si es el querellado". Por último, como medida complementaria, se podrá imponer costas y honorarios al abogado que haya procedido con temeridad.

Respecto a la potestad sancionadora del Departamento de Salud, cabe señalar que la Sección 3.21 de la LPAU expresamente faculta a las agencias para imponer sanciones en ejercicio de sus funciones cuasijudiciales, a saber:

     a. Si el promovente de una acción, o el promovido por ella, dejare de cumplir con las reglas y reglamentos o con cualquier orden del jefe de la agencia, del juez administrativo o del oficial examinador, la agencia a iniciativa propia o a instancia de parte podrá ordenarle que muestre cusa por la cual no deba imponérsele una sanción. La orden informará de las reglas, reglamentos u órdenes con las cuales no se haya cumplido, y se concederá un término de veinte (20) días, contados a partir de la notificación de la orden, para la mostración de causa. De no cumplirse esa orden, o de determinarse que no hubo causa que justificare el incumplimiento, entonces se podrá imponer una sanción económica a favor de la agencia o de cualquier parte, que no excederá de doscientos (200) dólares por cada imposición separada, a la parte o a su abogado, si este último es el responsable del incumplimiento.

     b. Ordenar la desestimación de la acción en el caso del promovente, o eliminar las alegaciones en el caso del promovido, si después de haberse impuesto sanciones económicas y de haberlas notificado a la parte correspondiente, dicha parte continúa en su incumplimiento de las órdenes de la agencia.

c. Imponer costas y honorarios de abogados, en los mismos casos que dispone la Regla 44 de Procedimiento Civil, según enmendada. 3 LPRA sec. 9661.

Por su parte, el Departamento, a través del precitado Reglamento 9321 que regula el proceso adjudicativo de la agencia, establece de forma análoga que el Oficial Examinador podrá recomendar, ya sea a iniciativa propia o a instancia de parte, la desestimación de la querella al Secretario de Salud. Respecto a estos procedimientos, la Regla 28 del Reglamento 9321, *supra*, establece el proceso aplicable, tal como se detalla a continuación:

2. El Oficial Examinador podrá recomendar la desestimación de una querella, a iniciativa propia o a solicitud de la querellada, si la parte querellante o promovente deja de cumplir con estas reglas o con cualquier orden del foro administrativo. **Cuando se trate de un primer incumplimiento, la desestimación de la querella o la eliminación de las alegaciones solo procederá después que el foro, haya apercibido al representante legal de la situación y se le haya concedido la oportunidad para responder. Si el abogado o abogada de la parte no responde a tal apercibimiento, el foro procederá a imponer sanciones al abogado o abogada de la parte y se notificará directamente a la parte sobre la situación.** El Oficial Examinador dictara una orden, la cual se **notificará a las partes y su representante legal, requiriéndoles dentro o del término de diez (10) días desde que les notifique, exponer por escrito las razones por las cuales no deba desestimarse y archivarse la querella**. Luego de que la parte haya sido debidamente informada o apercibida de la situación y de las consecuencias que pueda tener el que la misma no sea corregida, el foro podrá ordenar la desestimación del pleito o la eliminación de las alegaciones (Énfasis nuestro).

3. El Oficial Examinador recomendara la desestimación y el archivo de todos los asuntos pendientes en los cuales no se haya efectuado tramite alguno por cualquiera de las partes durante los últimos seis (6) meses, a menos que tal inactividad se justifique oportunamente. Las mociones sobre suspensión o transferencia de vista o de prorroga no serán consideradas como un trámite a los fines de esta regla. Regla 28, inciso 2 y 3, Reglamento 9321, supra. (Énfasis nuestro).

Finalmente, es preciso destacar que la jurisprudencia ha reconocido de manera consistente que los reglamentos aprobados por agencias administrativas poseen fuerza de ley por ser de carácter vinculante y determinante en cuanto a los derechos, deberes y obligaciones de las personas sujetas a la jurisdicción de

la agencia. *Ayala Hernández v. Consejo Titulares,* 190 DPR 547, 568 (2014). Los derechos y las obligaciones que se reconocen en los reglamentos son oponibles por los afectados a las agencias que los aprueban. *Íd.* En conformidad con ello, después de que una agencia define los contornos de su acción mediante un reglamento, tiene la responsabilidad de aplicarlo celosamente. *Íd.* Por ello, una vez se aprueba, la ciudadanía en general, incluyendo la propia agencia que lo adoptó, están obligados por este. *Íd.*

### C. Desestimación como sanción

Como es harto conocido, en los procedimientos administrativos de carácter adjudicativo no son de aplicación las Reglas de Evidencia. Sección 3.13. (e) LPAU, 3 LPRA Sec. 9653. Ahora bien, tanto la ley como el Tribunal Supremo de Puerto Rico ha establecido que se pueden adoptar las normas o principios fundamentales de las reglas procesales, así como las de evidencia, cuando estas no son incompatibles con el procedimiento y sirvan para lograr una solución justa, rápida y económica de la controversia. *Flores Concepción v. Taino Motors*, 168 DPR 504 (2006). Acorde con lo anterior, la Regla 19 del Reglamento 9321, *supra,* sobre la aplicación de la Reglas de Procedimiento Civil, dispone que "no serán de aplicación a las vistas administrativas, pero los principios fundamentales se podrán utilizar para lograr una solución rápida, justa y económica del procedimiento y en la medida en que el funcionario que preside la vista lo estime necesario para llevar a cabo los fines de la justicia".

En lo concerniente a la facultad discrecional de los tribunales para imponer sanciones, esta se encuentra regulada por las Reglas 37.7 y 39.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 37.7 y 39.2. La Regla 37.7, sobre el manejo del caso, establece que si una parte o su representante legal incumple los términos de esta

regla o cualquier orden judicial sin justa causa, el tribunal impondrá una sanción económica. Por su parte, la Regla 39.2 faculta al tribunal para decretar, a iniciativa propia o a petición de parte, la desestimación del pleito. En aplicación de la Regla 39.2, *supra*, se ha reiterado que "los tribunales están obligados a desalentar la práctica de falta de diligencia e incumplimiento con las órdenes del tribunal mediante su efectiva, pronta y oportuna intervención". *Mejías et al. v. Carrasquillo et al.*, 185 DPR 288, 298 (2012).

No obstante a lo antes citado, en nuestro ordenamiento jurídico, existe como principio rector "la idoneidad de que las controversias se atiendan en los méritos". *Montañez Leduc v. Robinson Santana*, 198 DPR 543, 552 (2017). De igual manera, la jurisprudencia ha establecido que, por constituir la desestimación la más drástica de las sanciones a imponer, debe prevalecer únicamente en situaciones extremas en que haya quedado demostrado de manera clara e inequívoca la desatención y el abandono total de la parte con interés. *Mejías et al. v. Carrasquillo et al., supra.* Asimismo, se ha señalado que esta sanción solo procede después que otras hayan probado ser ineficaces para administrar justicia y, en todo caso, no debería imponerse sin un previo apercibimiento. Véase, *Rivera Gómez v. Arcos Dorados Puerto Rico, Inc.*, 212 DPR 194, 207 (2023).

En lo pertinente al caso que nos ocupa, respecto a las declaraciones de hechos probados y conclusiones de derecho, cabe destacar que el Artículo 3.14 de la LPAU, *supra,* dispone lo siguiente:

> La orden o resolución deberá incluir y exponer separadamente determinaciones de hecho si éstas no se han renunciado, conclusiones de derecho, que fundamentan la adjudicación, la disponibilidad del recurso de reconsideración o revisión según sea el caso. La orden o resolución deberá ser firmada por el jefe de la agencia o cualquier otro funcionario autorizado por ley.

Por su parte, la Regla 42.2 de las Reglas de Procedimiento Civil *supra*, establece a modo de excepción, que no será necesario especificar los hechos probados y consignar separadamente las conclusiones de derecho:

    a. al resolver mociones bajo las Reglas 10 ó 36.1 y 36.2, o al resolver cualquier otra moción, excepto lo dispuesto en la Regla 39.2;

    b. en casos de rebeldía;

    c. cuando las partes así lo estipulen, o

    d. **cuando el tribunal así lo estime por la naturaleza de la causa de acción o el remedio concedido en la sentencia**.

.

32 LPRA Ap. V, R. 42.2 (Énfasis nuestro).

### D. *Debido Proceso de Ley en el Derecho Administrativo*

Nuestra Constitución en su Artículo II, Sección 7, reconoce como derecho fundamental del ser humano el derecho a la vida, a la libertad y al disfrute de la propiedad, por lo que ninguna persona será privada de su libertad o propiedad sin un debido proceso de ley. Const. PR, Art. II, Sec.7, LPR, Tomo 1. De igual forma, "[d]ado que las agencias administrativas ejercen una función adjudicativa, al interferir no solo con los intereses de libertad, sino también con la propiedad de los individuos, las garantías de un debido proceso de ley han sido extendidas a dichas agencias". *PVH Motor v. ASG*, 209 DPR 122, 131 (2022). Como corolario de lo anterior, la LPAU en su Exposición de Motivos, establece que su objetivo es garantizar a la ciudadanía servicios públicos eficientes, ágiles y de calidad, interpretando y aplicando sus disposiciones con criterio liberal para alcanzar dichos fines, sin menoscabo de las garantías básicas del debido proceso de ley.

A esos efectos, el debido proceso de ley cuenta con dos modalidades: la sustantiva y la procesal. *Com. Electoral PPD v. CEE*

*et al.,* 205 DPR. 724, 743 (2020). La dimensión sustantiva del debido proceso de ley persigue salvaguardar los derechos fundamentales de las personas. *PVH Motor v. ASG, supra,* pág. 130. En su vertiente procesal, le impone al Estado la obligación de garantizar que la interferencia con los intereses de libertad y propiedad del individuo se haga a través de un procedimiento que en esencia sea justo, equitativo y de respeto a la dignidad de los individuos afectados. *Rodríguez Rodríguez v. Estado Libre Asociado de Puerto Rico,* 130 DPR 562, 578 (1992).

De conformidad con la Sección 3.1 de la LPAU, *supra,* en el contexto formal cuasi adjudicativo la agencia debe salvaguardar a las partes: (a) el derecho notificación oportuna de los cargos o querellas o reclamos en contra de una parte; (b) **derecho a presentar evidencia**; (c) derecho a una **adjudicación imparcial**; y (d) el derecho a que la **decisión esté basada en el expediente**.

Por su lado, el Tribunal Supremo de Puerto Rico ha reiterado que el componente procesal de este derecho en el ámbito de adjudicación impone: (1) notificación adecuada del proceso; (2) proceso ante un juez imparcial; (3) **oportunidad de ser oído**; (4) derecho a contrainterrogar testigos y examinar evidencia presentada en su contra; (5) tener asistencia de abogado, y (6) que la decisión se base en el récord. Sin embargo, "la exigencia de que las agencias provean un debido proceso de ley no constituye una camisa de fuerza que prive a estos de dirigir a sus procesos de forma justa, práctica y flexible". *Katiria's Cafe, Inc. v. Municipio Autónomo de San Juan,* supra, pág. 7.

Respecto al ejercicio de dichas garantías procesales, específicamente el derecho a ser oído y a presentar prueba, se hacen efectivas en el contexto de una vista administrativa, cuyo procedimiento de celebración se encuentra regulado en el Capítulo III de la LPAU. Es principio establecido que el debido proceso de ley

ofrece también protección contra la arbitrariedad administrativa. *Misión Ind. P.R. v. J.P.*, 146 DPR 64, 147 (1998).

**III.**

En el presente recurso, Advanced señala que erró el Departamento de Salud al desestimar su *Querella* denominada Q-24-02-002, la cual impugna la concesión de un CNC para establecer un programa de Hospicio, a consecuencia del continuo incumplimiento con órdenes e inactividad. Argumenta la Recurrente que no hubo inactividad de su parte y que su debido proceso de ley fue violentado. De igual forma, esboza que el mecanismo de desestimación no procedía, pues presentó mociones lo cual evidenciaban su interés en que la controversia se ventile en sus méritos. Por tanto, nos solicita que revoquemos la *Resolución* administrativa y dejemos sin efecto el CNC otorgado. Por su parte, la agencia recurrida argumenta en su oposición que la decisión del Departamento obedeció al patrón de incumplimiento de órdenes dictadas por el Oficial Examinador a través del procedimiento y no solo por inactividad. Asimismo, señala que la desestimación procedía, toda vez que esta se dio tras seguir los debidos apercebimientos. Veamos.

En el caso que nos ocupa, en su primer señalamiento de error, la parte Recurrente señala que el Departamento en su *Resolución* no realizó determinaciones de hecho ni conclusiones de derecho. Surge del expediente que, la determinación recurrida obedeció a una desestimación sancionatoria de carácter procesal, fundamentada en los incumplimientos reiterados de las órdenes emitidas por el Oficial Examinador, conducta que conforme a la Regla 28 (2) del Reglamento 9321 de Procedimientos Adjudicativos del Departamento de Salud, faculta esta medida. Es decir, no estamos ante una determinación dictada en sus méritos. Por

ende, no cabe emitir pronunciamientos sustantivos sobre los méritos de la controversia.

En este caso, nuestra decisión se ajusta estrictamente a lo obrante en el expediente administrativo, del cual se desprende claramente que la resolución adoptada se fundamentó en el informe del Oficial Examinador. Así lo demuestra el hecho de que el Secretario de Salud, en su *Resolución,* expresó: "**por los fundamentos vertidos en el referido informe, se acoge** la recomendación del oficial examinador y, en consecuencia, se desestima la Querella presentada" (Énfasis nuestro). El Secretario, a tenor con su facultad discrecional, acogió la recomendación fundamentada en los reiterados incumplimientos procesales de la Recurrente. En virtud de lo anterior, concluimos que el Departamento no incidió al omitir determinaciones de hecho y conclusiones de derecho en su *Resolución,* por tanto, no se cometió el error esbozado.

Resuelto lo anterior, procedemos a analizar conjuntamente los señalamientos de error dos y tres, correspondientes a la falta de celebración de la vista administrativa y a la alegada imparcialidad del oficial examinador, que influyó en la *Resolución* del Secretario de Salud. En primer lugar, respecto a la omisión de la celebración de la vista administrativa, consta en el expediente que tanto la Recurrente como su abogado fueron debidamente apercibidos, según el procedimiento aplicable en la Regla 28 (2), del Reglamento 9321, *supra*, sobre la consecuencia de incumplir con la orden emitida. Podemos destacar como ejemplo la *Orden* de mostrar causa emitida a Advanced, la cual fue notificada a su representación legal el 23 de julio de 2024, a los fines de demostrar si aún tenía interés en seguir con el pleito, tras esta

parte **incumplir con una orden previa**.[23] Del mismo modo, ante el incumplimiento de la *Orden* emitida el 23 de julio de 2024, el Oficial Examinador emitió *Orden* el 22 de agosto de 2024 y en esta dejó claro las consecuencias de este **segundo incumplimiento** tanto a Advanced como a su representación legal conforme lo exige la Regla 28(2) del Reglamento 9321, *supra*. La desestimación inicial efectuada el 17 de septiembre de 2024 y su reconsideración, en la videoconferencia llevada a cabo 18 de septiembre de 2024, son suficientes para reafirmar, que la parte estaba plenamente informada de los efectos de su inacción.

Por otra parte, las constancias administrativas revelan que a las partes se les otorgó la oportunidad de celebrar la vista "preparados", posibilidad que Advanced desprovechó. Así, aunque, la Recurrente alega violación a la Ley Núm. 2, *supra*, y los Reglamentos 9084 y 9321, la *Orden* emitida el 2 de diciembre de 2024, evidencia que, de haber comparecido preparados, la vista se hubiera realizado. Por tanto, el Oficial Examinador actuó conforme a derecho al garantizar la oportunidad procesal, sin que ello implicara una obligación a otorgar más oportunidades de las ya proporcionadas. Por lo expuesto, resolvemos que el Departamento no erró al desestimar la querella al haber otorgado la oportunidad de la celebración de la vista administrativa en su fondo.

Sobre el tercer señalamiento de error, en cuanto a la imparcialidad del Oficial Examinador, es menester destacar que éste actuó conforme al procedimiento dispuesto en la Regla 28(2) de Reglamento 9321, *supra*, ya que fundamentó su decisión en un informe completo respaldado por las órdenes del expediente. Las múltiples órdenes y reconsideración demuestran que las partes fueron advertidas reiteradamente. Aquí, el Oficial Examinador

---

[23] Toda vez que esta *Orden* se dictó en reacción al primer incumplimiento de Advanced, el Oficial Examinador correctamente notificó únicamente a la representación legal de esta parte conforme lo establece la Regla 28(2) de Reglamento 9321, *supra*

tenía plenas facultades para recomendar la desestimación ante los incumplimientos continuos, independientemente de la incomparecencia a los procesos por parte de la Recurrente. Además, Advanced no aportó alegación fáctica específica que indique parcialidad o prejuicio limitándose a una mera afirmación insustancial. Por lo tanto, la decisión del Secretario de Salud, descansó en el expediente completo, y en consonancia con las facultades delegadas al Oficial Examinador para recomendar la desestimación. En consecuencia, colegimos que no hubo error por parte de la agencia, toda vez que la parte no pudo demostrar parcialidad, y la decisión se sustentó en un informe detallado.

A la luz de lo anterior, resolvemos que, según el expediente ante nosotros, el Departamento actuó correctamente al llevar a cabo el proceso de desestimación de la querella Q-24-02-002. La decisión está fundamentada en prueba sustancial. De igual manera, el organismo administrativo no incidió en la aplicación o interpretación de las leyes o los reglamentos aplicables y tampoco ha mediado una actuación arbitraria, irrazonable o ilegal ni la actuación administrativa lesiona derechos constitucionales fundamentales. En vista de ello, mantenemos la *Resolución* del Secretario de Salud que ordena la desestimación.

**IV.**

Por los fundamentos que anteceden, **confirmamos** el dictamen recurrido.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones